FILED US District Court-UT
AUG 05 '26 PM12:46

Dallin Brad Hawkins
613 E. 200 N.
Alpine, UT 84004
Plaintiff Pro Se

Case: 2:26-cv-00729
Assigned To : Romero, Cecilia M.
Assign. Date : 8/5/2026
Description: Hawkins et al v. Pielet et al

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH**

DALLIN BRAD HAWKINS, an individual; and

KELLEY HAWKINS, an individual, and as Successor Trustee of The Lund Family Revocable Trust dated August 30, 2018,

Plaintiffs,

**vs.**

JIM PIELET, an individual;

EDMOND ANDREWS, an individual;

MICHAEL KESTI, an individual;

HARRY J. ROSS, an individual, individually and d/b/a Law Office of Harry J. Ross;

JOSHUA ENOCH BALLARD, an individual, individually and d/b/a Opes Sanctum Legacy Trust, TR;

ERIC JASON TALLEY, an individual;

ICONIC RESOURCES, LLC;

JAMES MODEL SHALINSKY, an individual, individually and d/b/a Advanced Funding Group;

MM INVESTMENT PARTNER, LLC, a Delaware limited liability company,

Defendants.

**Case No.** ____________________

**COMPLAINT AND DEMAND FOR JURY TRIAL**

*(Fraud; Civil Conspiracy; Conversion; Unjust Enrichment; Breach of Fiduciary Duty; Aiding and Abetting Fraud and Breach of Fiduciary Duty; Recovery Under Utah Code § 75-3-1201 / Treble Damages)*

Judge: ____________________

Plaintiffs Dallin Brad Hawkins ("Mr. Hawkins") and Kelley Hawkins, individually and as Successor Trustee of The Lund Family Revocable Trust dated August 30, 2018 (the "Trust") ("Ms. Hawkins," and together with Mr. Hawkins, "Plaintiffs"), appearing pro se, complain against Defendants Jim Pielet ("Pielet"), Edmond Andrews ("Andrews"), Michael Kesti ("Kesti"), Harry J. Ross ("Ross"), Joshua Enoch Ballard ("Ballard"), Eric Jason Talley ("Talley"), Iconic Resources, LLC ("Iconic"), James Model Shalinsky ("Shalinsky"), and MM Investment Partner, LLC, a Delaware limited liability company ("MMIP," and together with all other Defendants, "Defendants"), and allege as follows:

## NATURE OF THE ACTION

1. This is an action for fraud, civil conspiracy, conversion, unjust enrichment, and breach of fiduciary duty arising out of a scheme in which Defendants exploited Mr. Hawkins's incarceration to induce Ms. Hawkins — his mother — and Mr. Hawkins to pay approximately $230,160.63 in the aggregate for purported

criminal-defense legal services that were never rendered. Of that amount, $90,000 belongs to a trust of which Ms. Hawkins is trustee, as described below, and is asserted by Ms. Hawkins in her capacity as Successor Trustee; the remaining $140,160.63 is asserted by Plaintiffs individually.

2. This action is brought by Plaintiffs individually and does not assert claims belonging to Integrity Financial Groups, Inc. ("IFG"), a corporation of which Mr. Hawkins is the sole shareholder. Separate and apart from the conduct at issue here, Ballard, Talley, and Shalinsky were also advanced $135,000, $75,000, and $135,000, respectively, and Ross was separately paid $5,000, all directly by IFG and before Mr. Hawkins's incarceration, for underwriting and legal work that was never completed or delivered as represented. Those sums were paid by IFG, not by Plaintiffs, and belong to IFG's own claim; they are not sought in this action and are instead addressed in the related complaints filed on behalf of IFG. IFG's separate claims against certain of these Defendants and others are the subject of related complaints filed with federal and state law-enforcement and regulatory authorities, and, to the extent IFG elects to pursue civil claims, would be brought by IFG through licensed counsel in a separate action, as a corporation may not proceed in litigation pro se.

3. The claims asserted here are personal to Plaintiffs, with one exception described in the following paragraph: funds were drawn from Ms. Hawkins's home through a home-equity line of credit and paid directly by her, and additional funds were paid from personal funds under Mr. Hawkins's power of attorney, for services that did not exist.

4. The $90,000 drawn via home-equity line of credit referenced above was drawn against a home then owned by Julie Ann Lund, Ms. Hawkins's mother, who died in October 2025. Under Ms. Lund's Last Will and Testament, the residue of her estate, including her right to repayment of this $90,000, passes to the trustee of The Lund Family Revocable Trust. Ms. Hawkins is the duly qualified Successor Trustee of the Trust and, pursuant to Utah Code § 75-3-1201, is the successor entitled to collect this sum on behalf of the Trust, as set out in the Affidavit for Collection of Personal Property of Deceased attached hereto as Exhibit A and presented to Defendant MMIP prior to the filing of this action.

## PARTIES

5. Plaintiff Dallin Brad Hawkins is an individual and a resident of the State of Utah.

6. Plaintiff Kelley Hawkins is an individual, the mother of Mr. Hawkins, and a resident of the State of Utah. Ms. Hawkins is also the duly qualified Successor Trustee of The Lund Family Revocable Trust dated August 30, 2018, established by her late parents, H. Brent Lund (d. January 2024) and Julie Ann Lund (d. October 2025), and brings this action in that capacity as to the $90,000 described below, in addition to her individual capacity.

7. Defendant Jim Pielet, also appearing in public records under the name Jim Beth Pielet, date of birth October 1950, is, on information and belief, an individual residing at 510 SE 5th Ave., Apt. 505, Fort Lauderdale, FL 33301, who conducted the acts described below through MM Investment Partner, LLC.

8. Defendant Edmond Andrews, full name Edmond Blake Andrews, date of birth June 1949, is, on information and belief, an individual residing at 33 SE 8th St., Apt. 415, Boca Raton, FL 33432, who conducted the acts described below through MM Investment Partner, LLC, and who is not a licensed attorney.

9. Defendant Michael Kesti, full name Michael Wayne Kesti, date of birth June 1961, is, on information and belief, an individual residing at 8161 SW 170th Ter., Palmetto Bay, FL 33157, identified as a business partner of Andrews, who conducted the acts described below through MM Investment Partner, LLC.

10. Defendant Harry J. Ross is, on information and belief, an individual and a licensed attorney residing in or doing business from Boca Raton, Florida, doing business as the Law Office of Harry J. Ross.

11. Defendant Joshua Enoch Ballard is, on information and belief, an individual, date of birth February 26, 1990, residing at 617 S. Locust St., Jefferson, IA 50129, individually and doing business as Opes Sanctum Legacy Trust, TR. On information and belief, Ballard held himself out to Plaintiffs as an experienced financial and insurance professional; public licensing records confirm Ballard held a Texas insurance producer license (License No. 1734452) that was active during the period of the conduct alleged herein but became inactive shortly afterward, and a California mortgage loan originator endorsement (NMLS ID 1683314) that had not been sponsored by any employer since June 2023 — meaning that, at the time of the conduct alleged herein, Ballard was not currently authorized to conduct mortgage business under either credential, a fact he did not disclose to Plaintiffs. On information and belief, Ballard has used this purported trust as a vehicle in connection with some or all of the conduct described in this Complaint; Plaintiffs reserve the right to seek discovery, including by third-party subpoena, regarding the formation, funding, and use of Opes Sanctum Legacy Trust, TR, as well as other entities associated with Ballard, including Millenium Financial, LLC (d/b/a 123 Rapid Funding) and Direct Lending Connection, and whether any of them has been used as an instrumentality to receive, conceal, or transfer proceeds of the fraud alleged herein.

12. Defendant Eric Jason Talley is an individual, date of birth February 18, 1970, residing at 109 Gannet Trl., Argyle, TX 76226, who conducted the acts described below in part through Iconic Resources, LLC.

13. Defendant Iconic Resources, LLC is a Texas domestic limited liability company (Company No. 0804003669, incorporated April 2, 2021), registered at 950 E. State Highway 114, Suite 160, Southlake, TX 76092, with Eric J. Talley as its registered agent, director, and president. Since January 2024, Iconic Resources, LLC has also done business as "Inspire Insurance & Risk Management Services" — the name under which, on information and belief, Talley held himself out in connection with structuring the insurance policy described in the related IFG complaints.

14. Defendant James Model Shalinsky is, on information and belief, an individual residing in or doing business from Newtown, Pennsylvania, individually and doing business as Advanced Funding Group.

15. Defendant MM Investment Partner, LLC is a Delaware limited liability company (Company No. 5457330, incorporated December 30, 2013), through which Pielet, Andrews, and Kesti conducted the acts described below. Its registered agent is Harvard Business Services, Inc., 16192 Coastal Hwy, Lewes, Sussex County, DE 19958.

## JURISDICTION AND VENUE

16. This Court has subject-matter jurisdiction under 28 U.S.C. § 1332(a) because Plaintiffs are citizens of Utah, Defendants are, on information and belief, citizens of states other than Utah, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

17. This Court has personal jurisdiction over Defendants because, on information and belief, each Defendant directed communications, representations, and/or the receipt of funds into or from Utah, where Plaintiffs reside, in connection with the conduct described below, and each Defendant's conduct caused harm to Plaintiffs in Utah.

18. Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims occurred in this District, including the payments made by Ms. Hawkins from Utah and the harm suffered by Plaintiffs in Utah.

## GENERAL FACTUAL ALLEGATIONS

19. Mr. Hawkins is the Founder, CEO, and sole shareholder of IFG, a financial-services corporation. Ballard, Talley, and Shalinsky had each been engaged in connection with IFG's business.

20. On or about the morning of a demand for return of stolen capital being prepared against a third party (the subject of a related complaint), Mr. Hawkins was arrested by Utah Adult Probation and Parole on an alleged parole violation and IFG's remote office / Mr. Hawkins's residence was raided.

21. Following Mr. Hawkins's incarceration, Ballard, Talley, and Shalinsky represented to Mr. Hawkins and Ms. Hawkins, including in multiple recorded jail and prison telephone calls, that they intended to help secure Mr. Hawkins's release and to continue operating IFG in his absence.

22. Ballard thereafter began working with Pielet and Andrews, representing to Ms. Hawkins that Pielet, Andrews, and their company, MMIP, could provide or arrange criminal-defense legal services for Mr. Hawkins.

23. On information and belief, in Case No. 23-CV-80829-Rosenberg, Hanover Ins. Co. v. Ross et al. (S.D. Fla.), a federal court found that Ross, as escrow agent, transferred $1.2 million entrusted to him by a client to an unauthorized third party after being deceived by individuals whose credibility Pielet and Andrews vouched for, resulting in a ruling that Ross's malpractice insurer had no duty to cover him for the resulting claim. Pielet and Andrews were not parties to that case and no finding was made against them personally, but Ross's reliance on their vouching, and its consequences, were not disclosed to Plaintiffs.

24. Kesti, identified as a business partner of Andrews, participated in the conduct described below through MMIP.

25. Ballard, Pielet, and Andrews induced Ms. Hawkins to sign a "Lobbyist and Consulting Agreement" and to pay MMIP a total of $202,000, purportedly to retain criminal-defense representation for Mr. Hawkins. Of that $202,000, $90,000 was obtained by Ms. Hawkins drawing a home equity line of credit against a home belonging to her mother (Mr. Hawkins's grandmother, who has since passed away).

26. No legitimate legal-defense or other services of value were ever provided by Pielet, Andrews, Kesti, or MMIP in exchange for the $202,000.

27. Separately, after Mr. Hawkins's incarceration, Talley caused Ms. Hawkins, acting under Mr. Hawkins's power of attorney and using his personal funds, to pay Talley's company, Iconic Resources, LLC, a total of $10,629.38 across two payments. The first ($5,314.69) was accompanied by an invoice listing software and infrastructure costs, including an unexplained $70.42 charge attributed to a "David Pruett," whom Mr. Hawkins does not recognize and who is not a contracted client of IFG; on information and belief, those costs built out Talley's own business, operating as "Inspire Insurance & Risk Management Services," rather than Inspire Risk Management, LP, the IFG subsidiary Talley had actually been engaged to build out. The second payment ($5,314.69) was made with no invoice ever provided to Plaintiffs, after Ballard represented to Ms. Hawkins that the payment was vital to IFG. Neither payment was authorized by Mr. Hawkins or benefited IFG. (This $10,629.38 is distinct from, and in addition to, a separate $75,000 advance IFG paid Talley before Mr. Hawkins's incarceration for insurance-underwriting work, which is not at issue in this action; see Paragraph 2, above.)

28. Ross drafted contracts, including documents executed using Mr. Hawkins's power of attorney, which Ballard instructed Ms. Hawkins to sign, purporting to grant Ballard, Talley, and Shalinsky authority to operate IFG with indemnity. Ross invoiced approximately $17,531.25 across three post-incarceration payments ($10,000, $2,531.25, and $5,000), which Ms. Hawkins paid from Mr. Hawkins's personal funds, acting under his power of attorney, for this work and for other purported "legal work" performed for IFG while it was under Ballard's, Talley's, and Shalinsky's control — work that was not authorized by Mr. Hawkins, did not benefit IFG, and whose purpose remains unexplained.

28A. The document Ms. Hawkins was instructed to sign, titled "Comprehensive Authorization for Management of Business Affairs, Indemnification, and Autonomy" (the "Authorization"), exceeded the scope of the power of attorney under which she purported to act. The Durable Power of Attorney dated April 11, 2024 (the "POA") provides, at Paragraph 12, that any delegation of authority by the Attorney-in-fact "must be in writing and state the extent of the power delegated and the period of time in which the delegation will be effective." The Authorization instead states that it "remains in effect indefinitely until an official amendment or termination notice," stating no period of time whatsoever, in violation of the POA's own express requirement for any delegation.

28B. The Authorization also purports to grant powers nowhere enumerated in the POA, including: (a) blanket indemnification of Ballard, Talley, and Shalinsky for "all past, present, and future activities," including "any regulatory or administrative penalties"; (b) a purported obligation making Mr. Hawkins and IFG "jointly responsible for all costs and expenses" arising from "civil, criminal, administrative, or regulatory actions" taken against Ballard, Talley, or Shalinsky; (c) an assignment to Ballard, Talley, and Shalinsky, personally, of "full ownership" of "intellectual property rights … derived from their activities" performed for IFG; and (d) authorization for Ballard, Talley, and Shalinsky to use Mr. Hawkins's actual signature. None of these powers appears among the POA's enumerated categories of authority, which do not include indemnification of third parties, assumption of criminal or regulatory liability on Mr. Hawkins's or IFG's behalf, assignment of intellectual property to persons other than Mr. Hawkins, or authorization to use Mr. Hawkins's signature.

28C. On information and belief, Ballard directed or caused Ms. Hawkins to sign the Authorization, which Ms. Hawkins — who lacked experience with these matters and was acting under a power of attorney for her incarcerated son — had no independent means of knowing exceeded the scope of authority actually granted to her. Plaintiffs reserve the right to seek a declaration that the Authorization is void or unenforceable as beyond the scope of the POA.

32. On information and belief, Ross knew or should have known that Ms. Hawkins — who lacked experience with these matters and was acting under a power of attorney for her incarcerated son — was signing these documents without independent legal advice, and nonetheless drafted and invoiced for this work notwithstanding his own prior litigation history with Pielet and Andrews described above.

33. Over the following months, Ballard and Andrews provided Ms. Hawkins with false updates and false assurances that legal-defense work for Mr. Hawkins was underway, until communications ceased entirely.

34. Plaintiffs subsequently learned that Andrews is not a licensed attorney, that no legal-defense services were ever provided to Mr. Hawkins by any Defendant, and that none of the funds described above have been returned despite demand.

35. Shalinsky did not personally receive any of the post-incarceration payments described above, but participated in the broader scheme together with Ballard and Talley, including in representations made to Ms. Hawkins that funds were being used to pay for Mr. Hawkins's personal legal defense.

36. In total, Plaintiffs paid or had paid on their behalf approximately $230,160.63 to Defendants under the false pretense that the funds were being used for legitimate legal-defense services: $202,000 to MMIP (including the $90,000 sourced from the home-equity line of credit), $10,629.38 to Talley, and $17,531.25 to Ross.

**COUNT I — FRAUD / FRAUDULENT MISREPRESENTATION**

*(Against All Defendants)*

37. Plaintiffs incorporate by reference each of the foregoing paragraphs as if fully set forth herein.

38. Defendants represented to Plaintiffs that funds paid to MMIP, Talley, and Ross would be used to secure legitimate criminal-defense legal services for Mr. Hawkins.

39. These representations were false, and, on information and belief, Defendants knew the representations were false or made them with reckless disregard for their truth when made.

40. Defendants made these representations with the intent that Plaintiffs rely on them.

41. Plaintiffs reasonably relied on these representations in making the payments described above.

42. As a direct and proximate result of this fraud, Plaintiffs have suffered damages in an amount to be proven at trial, but not less than approximately $230,160.63.

**COUNT II — CIVIL CONSPIRACY**

*(Against All Defendants)*

43. Plaintiffs incorporate by reference each of the foregoing paragraphs as if fully set forth herein.

44. Defendants combined and agreed, expressly or tacitly, to pursue the scheme described above for the purpose of obtaining money from Plaintiffs under false pretenses.

45. Each Defendant committed one or more overt acts in furtherance of that agreement, including the representations, instructions, and receipt of funds described above.

46. As a direct and proximate result of this conspiracy, Plaintiffs have suffered damages in an amount to be proven at trial.

**COUNT III — CONVERSION**

*(Against Pielet, Andrews, Kesti, MMIP, Talley, Iconic, and Ross)*

47. Plaintiffs incorporate by reference each of the foregoing paragraphs as if fully set forth herein.

48. Plaintiffs had a right to the funds described above.

49. These Defendants wrongfully exercised dominion and control over those funds in a manner inconsistent with, and in denial of, Plaintiffs' rights.

50. Plaintiffs have demanded return of the funds and these Defendants have failed and refused to return them.

51. As a direct and proximate result, Plaintiffs have suffered damages in an amount to be proven at trial.

**COUNT IV — UNJUST ENRICHMENT (Pled in the Alternative)**

*(Against Pielet, Andrews, Kesti, MMIP, Talley, Iconic, and Ross)*

52. Plaintiffs incorporate by reference each of the foregoing paragraphs as if fully set forth herein.

53. Plaintiffs conferred a benefit on these Defendants in the form of the payments described above.

54. These Defendants appreciated and retained the benefit of those payments under circumstances that make it inequitable for them to do so without payment of their value.

55. Plaintiffs are entitled to restitution in an amount to be proven at trial.

**COUNT V — BREACH OF FIDUCIARY DUTY**

*(Against Ballard)*

56. Plaintiffs incorporate by reference each of the foregoing paragraphs as if fully set forth herein.

57. By virtue of the authority granted to him and exercised through Ms. Hawkins's execution of documents under Mr. Hawkins's power of attorney, Ballard owed Plaintiffs a fiduciary duty of loyalty, good faith, and fair dealing.

58. Ballard breached that duty by using his position to direct payments benefiting himself and his associates rather than Plaintiffs' interests, by failing to disclose material facts, including the true nature of Pielet's and Andrews's history and qualifications, as well as the true, unsponsored, and since-lapsed status of his own

mortgage and insurance credentials described in Paragraph 11, which he allowed Plaintiffs to rely on as indicia of trustworthiness, and by directing or causing Ms. Hawkins to sign the Authorization described in Paragraphs 28A-28C, which exceeded the scope of authority actually available to her and purported to strip IFG of ownership of its own intellectual property and impose open-ended indemnification and liability-shifting obligations on Mr. Hawkins and IFG for the benefit of Ballard and his associates.

59. As a direct and proximate result, Plaintiffs have suffered damages in an amount to be proven at trial.

**COUNT VI — AIDING AND ABETTING FRAUD AND BREACH OF FIDUCIARY DUTY**

*(Against Ross)*

60. Plaintiffs incorporate by reference each of the foregoing paragraphs as if fully set forth herein.

61. Ross knew, or was reckless in not knowing, of the risk of introducing Pielet and Andrews to Plaintiffs, given his own prior experience with them, as reflected in Case No. 23-CV-80829-Rosenberg, Hanover Ins. Co. v. Ross et al. (S.D. Fla.), in which Ross transferred client funds to an unauthorized party after being deceived by individuals whose credibility Pielet and Andrews vouched for.

62. Ross substantially assisted the scheme by drafting the power-of-attorney-based operating documents used to facilitate it — including the Authorization described in Paragraphs 28A-28C, which on its face exceeded the scope of the underlying POA and granted powers, including blanket indemnification and intellectual-property assignment, that no reasonably competent attorney reviewing the POA could have concluded were actually authorized — invoicing $17,531.25 across three post-incarceration payments for that and other unauthorized work, and by introducing or permitting the introduction of Pielet and Andrews to Plaintiffs without disclosing his prior related litigation history.

63. As a direct and proximate result, Plaintiffs have suffered damages in an amount to be proven at trial.

**COUNT VII — RECOVERY UNDER UTAH CODE § 75-3-1201; TREBLE DAMAGES**

*(Against MMIP, Pielet, Andrews, and Kesti)*

64. Plaintiffs incorporate by reference each of the foregoing paragraphs as if fully set forth herein.

65. Ms. Hawkins, as Successor Trustee of the Trust, is the successor of the estate of Julie Ann Lund entitled to collect the $90,000 chose in action described above, pursuant to Utah Code § 75-3-1201.

66. Ms. Hawkins presented these Defendants with a valid Affidavit for Collection of Personal Property of Deceased, attached as Exhibit A, demanding payment of the $90,000.

67. On information and belief, these Defendants have refused or will refuse to pay the $90,000 upon presentment of the Affidavit.

68. Pursuant to Utah Code § 75-3-1201, Ms. Hawkins, as Successor Trustee, is entitled to recover the $90,000, and this Court may, in its discretion, award damages up to three times that amount, together with costs of suit and reasonable attorney fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor and against Defendants, jointly and severally where applicable, and award:

- Compensatory damages in an amount to be proven at trial, but not less than approximately $230,160.63;
- As to Count VII, damages up to three times the $90,000 owed to the Trust, in the Court's discretion, pursuant to Utah Code § 75-3-1201, together with costs of suit and reasonable attorney fees as to that Count;
- Punitive or exemplary damages to the extent permitted by law, given the alleged willful and fraudulent nature of Defendants' conduct;
- Pre-judgment and post-judgment interest as allowed by law;
- Costs of suit;
- Restitution of all funds unjustly retained by Defendants;
- Such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all issues so triable.

Respectfully submitted,

Dallin Brad Hawkins, Plaintiff, Pro Se

613 E. 200 N., Alpine, UT 84004

+1 (801) 915-2977

dhawkins@IntegrityFinancialcorp.com

Kelley Hawkins, Plaintiff, Pro Se